# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PERMANENT GENERAL ASSURANCE )
CORPORATION, )
 )
    Plaintiff, )
 )
 ) No. 15 C 6881
vs. )
 ) Magistrate Judge Schenkier
MARIBEL RICO, individually and as )
mother and next friend of minor, )
MESSIAHS REYS, and MARDOQUEO )
MARINER-HERNANDEZ, )
 )
    Defendants. )

## MEMORANDUM OPINION AND ORDER[1]

Before us is a motion for summary judgment (doc. # 25) asking the Court to issue a declaratory judgment in favor of plaintiff Permanent General Assurance Corporation ("the General"). Plaintiff contends that an Illinois Personal Auto Policy it issued to defendant Maribel Rico ("Ms. Rico") does not legally obligate it to defend and indemnify Ms. Rico against a counterclaim filed by defendant Mardoqueo Mariner-Hernandez ("Mr. Hernandez") in connection with a state court lawsuit arising out of an auto accident between Mr. Hernandez and Ms. Rico's son, Messiahs Reyes ("Messiahs"). Ms. Rico, who is appearing *pro se,* filed a response (doc. # 30), and plaintiff filed a reply (doc. # 31). Defendant Hernandez has not submitted a response in opposition to the motion. We agree with plaintiff that summary judgment is proper, and thus grant its motion.

---

[1]Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 17) on October 21, 2015. Plaintiff and Mr. Hernandez consented to the jurisdiction of the Magistrate Judge on October 20, 2015 (doc. # 16); Ms. Rico consented to our jurisdiction on January 5, 2016 (doc. # 28), before this Court made any substantive rulings or decisions in the case.

I.

Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the movant shows that there is an absence of evidence to support the nonmoving party's case, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013) (internal citations and quotations omitted).

Plaintiff, as the moving party, filed a Local Rule 56.1 statement of undisputed facts (doc # 26: Pl. Statement of Undisputed Material Facts ("SOMF")). Ms. Rico did not respond to plaintiff's statement of facts (doc. # 30). Upon determining that Ms. Rico had not received the requisite Notice to Pro Se Litigants Opposing Summary Judgment, which explains the procedure by which she should respond to the SOMF and her right to file her own statement of additional facts, on February 24, 2016, the Court gave Ms. Rico leave to supplement her response with these materials by March 14, 2016 (doc. # 33). Ms. Rico did not file a supplement or seek additional time in which to do so.

Pursuant to Local Rule 56.1(b)(3)(B), we deem all of the statements in the SOMF admitted. *Schmidt. v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). In so doing, we recognize the difficulties that *pro se* litigants may face navigating the complexities of federal court procedures. However, even where a party is proceeding *pro se,* a district court is

well within its discretion to strictly enforce compliance with its local rules regarding summary judgment motions. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009). In any event, Ms. Rico's response to defendant's memorandum does not identify any dispute of fact; it only raises a disagreement with plaintiff's legal conclusion that the insurance policy at issue does not provide coverage in this case.

## II.

The undisputed facts are straightforward. The General issued insurance policy IL 7636021 to Maribel Rico and Jose Reyes, effective from August 19, 2012 through February 19, 2013 (the "Policy") (SOMF ¶ 6, Ex. A). Policy "Section 2 – Liability Coverage," states that the General "will pay for compensatory damages that any 'insured' becomes legally obligated to pay because of an 'auto accident'" (*Id.*). In the Liability Coverage section, "insured" is defined as "[y]ou, a family member or any insured driver for the ownership, maintenance or use of any car, pickup or van" (*Id.*).

On September 20, 2012, Ms. Rico's minor child Messiahs, was hit by a car driven by Mr. Hernandez while Messiahs was riding a skateboard near his home (the "Accident") (SOMF ¶¶ 7, 8). On behalf of Messiahs, Ms. Rico filed a lawsuit against Mr. Hernandez in the Circuit Court of Lake County, Illinois, seeking damages for injuries Messiahs allegedly received in the Accident (SOMF ¶ 9) (the "Underlying Case"). Mr. Hernandez subsequently filed a counterclaim for contribution against Ms. Rico and Messiahs, alleging that Ms. Rico negligently supervised her son and that this negligence was a contributing cause of the accident (SOMF ¶ 10). Ms. Rico tendered defense of the counterclaim to the General, which declined coverage and defense of the counterclaim on the ground that neither Ms. Rico nor her son qualify as an "insured" under the

3

Policy because neither one was operating a "covered auto" at the time of the Accident (SOMF ¶ 12).

Under Section 1 – Definitions and General Provisions, the Policy defines "covered auto" as "any car, pickup or van shown on the declarations page" (SOMF ¶ 6, Ex. A). In turn, "car, pickup or van" is defined as "a private passenger automobile, station wagon, passenger van or pickup truck . . . [w]hich is designated for travel on public roads and is subject to motor vehicle registration" (*Id.*). Further, the "Exclusions" portion of the Policy states that the General does not provide coverage "for the ownership, maintenance or use of . . . any vehicle other than a car, pickup or van" (*Id.*). At the time of the Accident, the Policy listed three vehicles on the declarations page (the "covered vehicles"); none of these automobiles was owned by Mr. Hernandez or otherwise involved in the Accident (*Id.*, SOMF ¶ 11).

### III.

Illinois law governs the interpretation of the Policy. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (Federal court sitting in diversity applies choice-of-law provisions of the forum state).[2] "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 525 (7th Cir.2013) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 189 Ill.Dec. 756, 620 N.E.2d 1073, 1077 (1993)).

In construing the Policy, our main task is to determine and give effect to the parties' intentions as expressed by the words of the Policy. *Rich v. Principal Life Ins. Co.*, 875 N.E.2d

---

[2]Illinois uses the "most significant contacts" test to determine choice of law. In insurance coverage cases, relevant contacts include the domicile of the insured, the place of delivery of the policy, and the place of performance. *Auto-Owners*, 580 F.3d at 547. In this case, all factors point to the application of Illinois substantive law to decide the controversy.

4

1082, 1090 (2007). As with any contract, we construe an insurance policy according to the plain and ordinary meaning of its unambiguous terms. *Auto–Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324 (7th Cir. 2010) (citing *Nicor, Inc. v. Associated Elec. & Gas,* 860 N.E.2d 280, 286 (2006)). Where a policy provision is ambiguous, Illinois courts liberally construe it in favor of coverage. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (2010). Guided by these principles, we conclude that the Policy does not require the General to defend or indemnify Ms. Rico in the Underlying Case.

The gist of plaintiff's argument is that the purpose of the Policy is to protect Ms. Rico and her family "from liability arising from the normal ownership, maintenance and use of the vehicles listed in the Policy declarations or any other 'car, pickup or van' they may be operating" (doc. # 27: Pl. Mem in Support of SJ at 5). Because the undisputed facts show that Messiahs was riding a skateboard and the only involved vehicle was owned and operated by a third party, plaintiff argues that the Policy does not cover the incident. Specifically, plaintiff contends that: (1) neither Messiahs nor Ms. Rico meets the definition of "insured" under the Policy; (2) neither Messiahs nor Ms. Rico was operating a "covered vehicle" at the time of the Accident; and (3) there is no causal connection between the Accident and the ownership, maintenance or use of a covered vehicle. In our view, these contentions reduce to a single issue, namely, whether the absence of involvement of either a vehicle or driver connected to the Policy precludes coverage for the Accident.

As a matter of contract interpretation, the Liability section of the Policy only covers Ms. Rico for an incident for which she is "insured:" that is, if she or someone else covered by the Policy was engaged in the "ownership, maintenance or use of any car, pickup or van at the time

5

of the subject occurrence" (Mem. in Support of SJ at 6).[3] The undisputed facts establish that neither Ms. Rico nor Messiahs was involved in such ownership, maintenance or use at the time of the Accident.

*First*, while it is true that Ms. Rico does own three vehicles that are listed on the declarations page of the Policy, coverage is not triggered for an accident that did not involve either one of those vehicles or one of the Policy holders as a driver. In *Country Casualty Ins. Co. v. Fisher*, 676 N.E.2d 1379 (Ill. App. Ct. 1997), a minor child was hit by a third party while he was riding a bicycle. As here, the third party driver sued for contribution in an underlying suit by the child's parents, and the parents' home owners insurer refused to defend or indemnify. The court found that although the home owner's insurance policy provided limited coverage for injuries from certain types of vehicles, that coverage was not triggered because "the injury causing vehicle was not an insured vehicle and was not being operated by an insured." *Id.* at 1383. Here, the Accident involved only a single vehicle, and that vehicle was not a car, pickup, or van that Ms. Rico owned, maintained or used. As a result, she was not an "insured" in connection with the Accident.

*Second*, in order for an accident incident to come within policy coverage, Illinois law requires a causal connection between the accident or injury and the ownership, maintenance or use of a vehicle. *State Farm Mutual Automobile Ins. Co. v. Pfiel*, 710 N.E.2d 100 (Ill. App. Ct. 1999). In *Pfiel*, the court found no liability coverage when a vehicle was used as a location in which to stab to death an occupant, and then to transport the body from the scene of the stabbing. The court explained that, at the time of the incident, the car was not being "used" in a manner that was reasonably consistent with the inherent nature of the vehicle. *Id.* at 105. In this case, Ms.

---

[3]Plaintiff does not dispute that Messiahs qualifies as a "family member" under the Policy, and agrees that he is covered by the Policy to the extent that the named insureds (in this case, his mother and father) are covered.

6

Rico's vehicle was even more physically remote from the Accident than was the vehicle involved in the incident in *Pfiel*. Indeed, Ms. Rico's vehicle had no connection at all to the Accident. Ms. Rico admits in her summary judgment response that she and Messiahs were at least eighteen feet away from the closest covered auto at the time of the Accident, and were not engaged in driving or riding in any other vehicle at the time (Pl. Response at 1, 2).

## CONCLUSION

For the foregoing reasons, we find that there are no material facts in dispute and, as a matter of law, the Policy does not provide coverage for an Accident that involved neither a vehicle owned, maintained or used by a named insured nor a named insured as a driver. Therefore, we grant plaintiff's motion for summary judgment (doc. # 25). We enter declaratory judgment in favor of plaintiff and against all defendants, holding that plaintiff is not required to provide a defense, indemnity or coverage under the Policy for any claims or counterclaims in the Underlying Case. This case is terminated.

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: April 20, 2016